Antonio Strongoli
vs.                    } No. 46154
Receivers of
Rhode Island Company

January 6, 1927

BAKER, J. Heard on defendant's motion for a new trial setting out the usual grounds. The ground of newly discovered evidence is not pressed.

This is the third time this case has been tried to a jury.

The facts show that the plaintiff, who was dealing in produce, parked his truck loaded with tomatoes on the westerly side of South Main Street in the City of Providence. In the middle of the street were two tracks upon which were operated the cars of the defendant company. The plaintiff's truck was headed in a southerly direction and a short distance ahead of it, near the curb, was a horse and wagon. The accident happened about noontime August 20, 1919. The plaintiff pulled out from the curbing toward the middle of the street in order to pass the horse and wagon immediately ahead of him, and in so doing got upon the tracks. After passing the team, plaintiff turned his truck immediately to the right to pull in nearer the sidewalk and just as the rear of the truck was leaving the rails, a street car operated by the defendant company struck it from the rear and pushed it into a pole standing on the edge of the sidewalk. The truck was considerably damaged, the load of tomatoes was thrown into the street, and the plaintiff himself was injured although he was not thrown to the ground.

The defendant contends that its car was being operated at a reasonable rate of speed and in a careful manner; that the plaintiff pulled his truck out onto the car tracks at a time when the electric car was only a very short distance away; that the motorman of the car did all he could to avoid the collision, and that the accident occurred through the plaintiff's own negligence.

The plaintiff on the other hand argues that the testimony shows that he drove his truck out from the curbing after looking to the rear at a time when the street car was at a considerable distance up the street; that the street car was driven at a high rate of speed down South Main Street; that the motorman did nothing whatever to check his car but merely rang his gong, and that before the plaintiff could get entirely clear of the track the street car struck the rear of the truck, doing the damages complained of, and then went a considerable distance southerly on South Main Street before it stopped.

On the question of liability both sides presented a number of disinterested witnesses. The defendant produced the conductor and motorman of the car and also a number of passengers who were seated in the car, and particularly several on the front seat. The testimony of some of these witnesses was not very definite as to how the accident occurred, some of them by reason of their position behind the motorman were not able

to see very clearly the movements of the truck in question. In the main, however, their testimony tends to support the defendant's contention that the car was being operated at the usual rate of speed down South Main Street and that the motorman made attempts to stop the car.

The plaintiff placed on the stand a number of disinterested witnesses who were at various points on South Main Street at the time the accident happened. The general trend of their testimony is that the car was a considerable distance up South Main Street when the plaintiff pulled his truck out on the car track to pass around the team ahead of him. Some of the witnesses place this distance as perhaps five or six hundred feet. They also testify that the electric car was being operated at a fast rate of speed but that the plaintiff's truck was moving slowly; that they did not see the motorman do anything to check the speed of the car and that the car went a considerable distance after hitting the truck.

The motorman of the car explains this last situation by saying that he permitted the car to proceed down South Main Street a distance because he did not wish to stop his car directly across a street intersection.

It seems to the Court, after giving due consideration to the conflicting testimony, that there was presented a pure question of fact for the jury to determine as to the liability. If the jury accepted the story of the occurrence as described by the plaintiff's witnesses, as apparently it did, then it appears to the Court that on the facts the doctrine of the last clear chance, so called, might well apply to this case. The jury may have taken the view that even though the plaintiff did drive his truck upon the car track as the defendant's car was approaching, yet defendant's motorman did not do all that he reasonably should have done under the cir-

cumstances after he saw or should have seen the situation of the plaintiff. A consideration of the testimony might make it seem as though perhaps the motorman took a chance that the plaintiff's truck would be off the track by the time the car reached that point, the testimony showing that only the extreme end of the truck was struck.

The Court is of the opinion that the verdict of the jury on the question of liability is supported by a fair preponderance of the testimony. Plaintiff's witnesses, as a whole, made a good impression on the Court and in its judgment were in a better position to see the movements of both the car and the truck and to judge their respective speeds than the passengers' on the front seat of the car.

The defendant also urges that the damages awarded by the jury, amounting to $422, are excessive.

Apparently the plaintiff was confined to his bed after the accident for about nine days, suffered more or less severely from the accident, and had to call in a doctor. His back was hurt and he claims that he has never entirely recovered from the effects of the accident.

Where the element of personal injury and pain and suffering is involved it is always extremely difficult for the Court to pass upon the measure of damages. That question is primarily one for the jury. Considering the evidence in this case, after making allowance for the injury done the truck, the tomatoes thereon, and the expenses in his business that the plaintiff was put to, it would seem as though perhaps the jury allowed upwards of $200 for personal injuries. On the whole, the Court can not say that this is unreasonable. While it believes that the plaintiff is being substantially compensated, there is in the case sufficient testimony to support the verdict and the amount awarded; and

there is nothing to show that the jury acted from passion or prejudice.

Defendant's motion for a new trial is denied.

For plaintiff: Charles R. Easton.

For defendant: Clifford Whipple and Earl A. Sweeney.